IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| SAGE MILL RESIDENTIAL, LTD., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> AIKEN COUNTY, SOUTH CAROLINA, ) <br> and SOUTH CAROLINA DEPARTMENT ) <br> OF TRANSPORTATION, ) <br> ) <br> Defendants. ) <br> ) | Civil Action No.: 1:24-cv-2733-JDA <br><br> **COMPLAINT** <br><br> *(Jury Trial Demanded)* <br><br> *(Inverse Condemnation; Unconstitutional Exaction; Regulatory Taking; Violations of Substantive Due Process; Equal Protection; Promissory Estoppel)* |

COMES NOW Plaintiff Sage Mill Residential, Ltd., by and through its undersigned counsel, and states this Complaint against Defendants Aiken County, South Carolina and the South Carolina Department of Transportation for intentionally violating the rights of Plaintiff and proximately causing damage to Plaintiff due to (i) inverse condemnation; (ii) unconstitutional exaction; (iii) regulatory taking; (iv) violation of substantive due process; (v) violation of equal protection; and (vi) promissory estoppel, as follows:

**PARTIES AND JURISDICTION**

1. Plaintiff Sage Mill Residential, Ltd. ("Sage Mill Residential" or "Plaintiff") is a limited partnership organized and existing under the laws of the State of Texas that does business and owns certain real property in Aiken County, South Carolina.

2. Defendant Aiken County, South Carolina ("County") is a municipal corporation organized and existing under the laws of the State of South Carolina. The County includes the Aiken County Planning Commission ("Planning Commission"), which is composed of nine (9) members appointed by Aiken County Council ("County Council"). The County also consists of various employees and officials that handle matters relating to zoning, planning, permitting, and

development, including the Aiken County Planning and Development Department ("Planning & Development") and Joel T. Duke ("Duke"), Director of Planning & Development.

3. Defendant South Carolina Department of Transportation ("SCDOT") is a state governmental agency organized and existing under the laws of the State of South Carolina.

4. This Court has jurisdiction over the County and SCDOT (collectively, "Defendants") and the subject matter of this action, and venue is proper in this Court.

## INTRODUCTION

5. This is an action against the County and SCDOT for damages, because both Defendants have imposed unconstitutional exactions on Sage Mill Residential by requiring that Plaintiff satisfy an unreasonable contingency and individually shoulder the costs of public infrastructure projects in order to obtain an encroachment permit and a final development approval. These demands rise to the level of unconstitutional exactions that have been imposed by the County and SCDOT, lack an essential nexus to a legitimate public purpose, and are not roughly proportionate to the traffic impacts of the subject development that the County and SCDOT are seeking to avoid, minimize, or mitigate.

## FACTUAL BACKGROUND

6. Sage Mill Residential is the owner and developer of an existing residential planned unit development known as "Sage Creek" (the "Sage Creek PUDs") that consists of approximately 635 acres. Sage Creek is located approximately one mile south of Interstate 20 along the east side of Bettis Academy Road in Graniteville (Aiken County), South Carolina.

7. The Sage Creek PUD I was originally approved by ordinance of the Aiken County Council on or about July 5, 2005, and the Sage Creek PUD II was originally approved by ordinance of Aiken County Council on or about October 19, 2007. As such, the Sage Creek PUDs are

themselves ordinances that are in full force and effect and which the County is not at liberty to disregard.

8. Sage Mill Residential was required to obtain numerous development approvals and permits for Sage Creek, including an encroachment permit from SCDOT to perform construction work in SCDOT maintained rights-of-way at the entrances or access points into Sage Creek and accommodate for projected additional traffic volume to Bettis Academy Road from the development of Sage Creek.

9. In connection with its encroachment permit application, Sage Mill Residential submitted a Traffic Impact Study ("TIS") to SCDOT, which incorporated projected traffic impacts to Bettis Academy Road from the Sage Creek residential PUD general development plans, which at the time, consisted of a proposed 1,310 single-family homes, 135 town homes, a 650-student elementary school, a church, and approximately 60,000 square feet of retail sites.

10. After reviewing the TIS, SCDOT provided comments and recommendations on certain improvements to incorporate into the development plan to accommodate the additional traffic volume to Bettis Academy Road as a result of the development of Sage Creek. These improvements included: (i) the widening of Bettis Academy Road along the entire length of the development's frontage to provide a 3-lane section; (ii) providing a right turn lane on Bettis Academy Road at the main entrance; and (iii) installing a traffic signal at the main entrance with Bettis Academy Road at total development build out.

11. SCDOT and Sage Mill Residential discussed and agreed on delaying these improvements based on the ultimate success and timing of the phased development of Sage Creek.

12. Thereafter, on or about June 16, 2006, SCDOT issued the encroachment permit to Sage Mill Residential.

13. Sage Mill Residential began developing Sage Creek in 2006, and the development has continued over the years in phases. Currently Sage Creek has over 1,000 dwelling units in multiple subdivisions with the vast majority of dwelling units being single-family homes. The planned commercial portion of Sage Creek did not materialize and ultimately the development would only consist of residential single-family homes and townhomes, Leavelle McCampbell Middle School, and Byrd Elementary School.  The shift away from the commercial portion of the development resulted in a significant reduction in the traffic impacts as previously projected in the TIS submitted to SCDOT based on the initial Sage Creek residential PUD general development plans, a fact that Defendants have refused to sufficiently acknowledge.

14. Furthermore, Sage Mill Residential donated the approximately eighty-five (85) acres needed for the construction of the two school campuses by the Aiken County School District. This donation was a commitment made by Sage Mill Residential prior to development even beginning and has had a demonstrable positive impact on educational quality and academic performance in Aiken County.

15. Access to Sage Creek is provided via three (3) entrances or access points from Bettis Academy Road.  These entrances or access points include: (i) Flat Rock Lane on the northern limits of the site; (ii) Sage Creek Boulevard in the central part of the site; and (iii) Weldon Way on the southern limits of the site.

### *The Waterfall Subdivision*

16. The last phase of the Sage Creek PUD II remaining to be developed is the "Waterfall" subdivision, which consists of approximately 97.37 acres located in the eastern portion of the site and bears tax map number 068-00-05-001 (the "Property").

17.  The current site plan for Waterfall consists of approximately 291 lots with single-family homes at the site location indicated below.



18.  Waterfall will not require the construction of any new entrances or access points for direct connection to Bettis Academy Road and will only require an interior extension of Sage Creek Boulevard to the east to provide access and service to Waterfall.  As such, the existing entrances or access points from Bettis Academy Road will be utilized to service Waterfall.

19.  In connection with the development of Waterfall, Sage Mill Residential submitted a preliminary plat application to the County in accordance with the County's Land Management Regulations.  This section of single-family homes, which is a portion of the overall project, was part of the originally approved Sage Creek PUD II as amended on or about October 19, 2007 and is accessed using access points that are already built, such that an "encroachment permit" is not needed.  The encroachment already exists.

20.  The County demanded that Sage Mill Residential submit an updated TIS that incorporated anticipated traffic impact from the development of Waterfall, which Sage Mill Residential commissioned in June 2021.

21. The updated TIS submitted by Sage Mill Residential to the County indicated relatively minor traffic impacts from the development of Waterfall but did find that construction of dedicated south-bound left turn lanes on Bettis Academy Road at the Flat Rock Lane and Sage Creek Boulevard access points into Sage Creek were warranted under both existing and future conditions to help with intersection delays and service levels during peak hours.

22. However, the updated TIS indicated that dedicated north-bound right turn lanes on Bettis Academy at the Flat Rock Lane and Sage Creek Boulevard access points were not necessary and would have minimal impact on intersection delays.

23. On or about May 6, 2022, Sage Mill Residential submitted the updated TIS to SCDOT in connection with seeking an encroachment permit to widen Bettis Academy Road for the construction of the dedicated south-bound left turn lanes at the Flat Rock Lane and Sage Creek Boulevard access points into Sage Creek as called for in the updated TIS.

24. On or about June 28, 2022, SCDOT completed an acceptance review of the updated TIS finding that it was considered acceptable with the caveat that SCDOT recommended not only that dedicated south-bound left turn lanes be constructed at the Flat Rock Lane and Sage Creek Boulevard access points but also that north-bound right turn lanes be constructed at both access points.

25. In late 2022, Sage Mill Residential met and communicated with the County regarding a timeline for proceeding with the development of Waterfall and the SCDOT encroachment permit that remained pending.

26. On or about October 20, 2022, Sage Mill Residential received unanimous "contingency approval" from the Planning Commission of its preliminary plat application for Waterfall, with the contingency being that before final approval of the preliminary plat application

would be provided by the County, an agreement between Sage Mill Residential and the County would need to be finalized related to the timeline for completing the Bettis Academy Road improvements at the access points to Sage Creek.

27. Discussions continued between the parties throughout 2023, when the County ultimately took the position that its final approval of the preliminary plat application for the development of Waterfall to proceed was contingent upon Sage Mill Residential agreeing to undertake and complete the improvements recommended by SCDOT in its June 28, 2022 acceptance review of the updated TIS. Specifically, the County would not provide final approval of the preliminary plat application for the development of Waterfall to proceed until Sage Mill Residential agreed to construct dedicated left turn lanes as well as right turn lanes at the Flat Rock Lane and Sage Creek Boulevard access points. This contingency imposed by the County is an unconstitutional exaction.

28. Additionally, SCDOT would not issue an encroachment permit to Sage Mill Residential for the Bettis Academy Road improvements in relation to the Waterfall subdivision until Sage Mill Residential agreed to not only undertake and construct left turn lanes at the Flat Rock Land and Sage Creek Boulevard access points but to also undertake and construct right turn lanes at both access points. This contingency imposed by SCDOT is also an unconstitutional exaction.

29. In total, Sage Creek only accounts for approximately 22.4% of daily trips along Bettis Academy Road at the subject access points, to which the addition of the Waterfall development and the 291 homesites will only indicate a relatively minor additional traffic impact and daily trips.

30. However, SCDOT and the County are attempting to require Sage Mill Residential to pay a disproportionate and exorbitant amount of costs for road improvements on Bettis Academy Road, which include improvements *already* encompassed in the SCDOT planned improvements identified in the Bettis Academy Road Corridor Study. Furthermore, the actions of the County and the SCDOT constitute a regulatory taking because Plaintiff's ability to pursue their project is being conditioned upon Plaintiff acquiring rights-of-way on property owned by third parties, relocating existing utilities owned by third parties, and engaging in construction activity on property owned by third parties, none of which Plaintiff has the authority to do.

31. The County and SCDOT, on the other hand, have the authority to acquire property rights through eminent domain, relocate utility easements, and engage in road building activities. Nevertheless, Defendants are refusing to exercise these rights as part of a stratagem to coerce Plaintiff to perform public infrastructure projects if Plaintiff wishes to exercise the property rights that are established under the Sage Creek PUDs.

32. SCDOT and the County have conditioned the issuance of an encroachment permit and final development approval upon the undertaking of road improvements that, even if Plaintiff could perform them, grossly exceed any "rough proportionality" to the relative impacts of the underlying development of Waterfall.

33. Through these unconstitutional exactions, SCDOT and the County are requiring Sage Mill Residential to fund approximately 40% of the future improvements already called for by SCDOT in the Bettis Academy Road Corridor Study. This is despite Sage Creek only accounting for approximately 22.4% of daily trips along Bettis Academy Road at the subject access points, and the additional development of Waterfall only indicating a relatively minor additional

traffic impact and amount of daily trips. The development of Waterfall will not substantially increase traffic congestion along Bettis Academy Road.

34. Furthermore, requiring Sage Mill Residential to construct north-bound right turn lanes at both access points will require coordinating of and managing the relocation of affected utilities, including a 24-inch water main and numerous fiber lines, which will require Sage Mill Residential to be responsible for maintaining both erosion control and traffic control. This is not only an inappropriate demand but will result in additional delay, excess expense, and further uncertainty to the economic viability and success of the planned development.

35. These unconstitutional exactions imposed by the County and SCDOT on Sage Mill Residential are not being applied in a uniform or consistent manner with other developments located along Bettis Academy Road.

36. These unconstitutional exactions imposed by the County and SCDOT have caused significant delay and financial damage to Sage Mill Residential, including but not limited to a builder and buyer recently terminating a Lot Purchase Agreement for Waterfall as result of the excessive regulatory delay and uncertainty surrounding the unconstitutional exactions imposed by the County and SCDOT.

**FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS**
(*Inverse Condemnation / Unconstitutional Exactions and Regulatory Taking*)

37. Plaintiff reasserts and realleges each allegation above as if fully repeated herein.

38. This is an action for inverse condemnation against the County and SCDOT for imposing unconstitutional exactions on Plaintiff in violation of the Fifth and Fourteenth Amendments of the United States Constitution.

39. The Takings Clause of the Fifth Amendment of the United States Constitution provides "nor shall private property be taken for public use, without just compensation." U.S. Const., Fifth Amendment.

40. Pursuant to the Fifth Amendment, the County and SCDOT may not place a condition or exaction on the approval of encroachment or development permit unless the government entity's demand has an "essential nexus" and a "rough proportionality" to the proposed impacts of the development. *See Koontz v. St, Johns River Water Mgmt. Dist.*, 133 S. Ct. 2586, 2595 (2013).

41. "Extortionate demands for property in the land-use permitting context run afoul of the Takings Clause not because they take property but because they impermissibly burden the right not to have property taken without just compensation." *See Koontz*, 133 S. Ct. at 2596.

42. The exactions imposed by the County and SCDOT are unconstitutional exactions in violation of the Fifth and Fifteenth Amendments to the United States Constitution, because they are conditions imposed on Sage Mill Residential's proposed use of the Property that are not roughly proportionate to the impacts of the proposed use that the County and SCDOT seeks to avoid, minimize, or mitigate – *i.e.*, the traffic and related road impacts of the Waterfall development.

43. In imposing the exactions on Sage Mill Residential, the County and SCDOT is requiring Sage Mill Residential to undertake construction and fund an excessive percentage of road improvements for Bettis Academy Road in relation to the development of Waterfall. In total, Sage Creek only accounts for approximately 22.4% of daily trips along Bettis Academy Road at the subject access points, to which the addition of the Waterfall development and the 291 homesites will only indicate a relatively minor additional traffic impact and daily trips.

44. These unconstitutional exactions are significantly disproportionate to the corresponding burden placed on the County and SCDOT's road infrastructure from the development of the Waterfall subdivision.

45. The County and SCDOT's imposition of the unconstitutional exactions constitute a regulatory taking entitling Sage Mill Residential to just compensation.

46. The County and SCDOT's actions as alleged herein deprived Sage Mill Residential of the economically beneficial use of the Property and has imposed a severe financial burden and regulatory delay on Sage Mill Residential, interfering with its distinct and reasonable investment-backed expectations.

47. The County and SCDOT's actions were intended to serve a public purpose. The County and SCDOT have failed and refused to pay just compensation for the regulatory taking resulting from their actions.

48. Sage Mill Residential is therefore entitled to an award of just compensation against the County and SCDOT for their unconstitutional regulatory taking in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

**FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANTS**
(*Violation of Substantive Due Process as Secured by the South Carolina Constitution and Fifth and Fourteenth Amendments to the United States Constitution*)

49. Plaintiff reasserts and realleges each allegation above as if fully repeated herein.

50. At all times relevant, Sage Mill Residential maintained a property right as recognized and protected by the South Carolina Constitution and United States Constitution.

51. The Due Process Clause of the United States Constitution and South Carolina Constitution requires that governmental entities, like the County and SCDOT, not abuse their power in such a way that violates a constitutionally protected interest.

52. 42 U.S.C. § 1983 provides that every person who, under color of any statute, ordinance regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

53. Article I, Section I of the South Carolina Constitution provides that no person "shall be deprived of life, liberty, or property without due process of law, nor shall a person be denied the equal protection of the laws."

54. Section 1983 alone creates no substantive rights; rather it provides a remedy for deprivations of rights established elsewhere in the Constitution.

55. The County and SCDOT's impositions of the unconstitutional exactions and refusal to issue an encroachment permit and development approval deprived Sage Mill Residential of its constitutionally protected right to due process under the South Carolina Constitution and the Fifth and Fourteenth Amendments of the United States Constitution.

56. The actions of the County and SCDOT were an irrational, arbitrary, and capricious exercise of power, without any rational basis in fact or law, and violated Sage Mill Residential's constitutional guarantee of due process as secured by the South Carolina Constitution and Fifth and Fourteenth Amendments to the United States Constitution.

57. The actions of the County and SCDOT violated Sage Mill's Residential's right to put its Property to its legitimate and lawful use.

58. Sage Mill Residential has suffered significant financial damages as set forth herein.

59. The County and SCDOT, based on the allegations stated herein, have violated Sage Mill Residential's due process rights as secured by the South Carolina Constitution and Fifth and Fourteenth Amendments to the United States Constitution, entitling Sage Mill Residential to relief under 42 U.S.C. § 1983 *et seq*. in an amount to be proven at trial

### FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANTS
*(Violation of Equal Protection as Secured by the Fifth and Fourteenth Amendments to the United States Constitution and Article 1, Section 3 of the South Carolina Constitution)*

60. Plaintiff reasserts and realleges each allegation above as if fully repeated herein.

61. This is an action against the County and SCDOT for damages under the Civil Rights Act, 42 U.S.C. § 1983, which exists to remedy instances where an act or omission done under color of law deprives a person of a right, privilege or immunity secured by the United States Constitution or laws of the United States.

62. In imposing the unconstitutional exactions on Sage Mill Residential, the County and SCDOT acted under the color of law, as that term is defined under Section 1983. The decision by the County and SCDOT to impose the exactions constitutes an "official policy or custom" as required under Section 1983.

63. At all times relevant, Sage Mill Residential maintained a property right created under applicable law and as recognized and protected by the United States Constitution and South Carolina Constitution.

64. The Equal Protection Clauses of the United States Constitution and South Carolina Constitution require that governmental entities like the County and SCDOT treat similarly situated persons or entities alike.

65. In imposing the exaction on Sage Mill Residential, the County and SCDOT deprived Sage Mill Residential of its constitutionally protected right to equal protection under the

Fifth and Fourteenth Amendments to the United States Constitution and Article 1, Section 3 of the South Carolina Constitution.

66. With respect to other property owners and/or applicants similarly situated, the County and SCDOT has not required disproportionate road infrastructure exactions and has not required all final government approvals of the road improvement prior to issuing approvals for development to proceed. Similarly situated property owners or developer applicants which all contribute to the traffic count on Bettis Academy Road include, but are not limited to convenience stores, churches, truck stops, discount retailers, hotel/motels, a laundromat, restaurants, a county industrial complex, and other residential developments on both sides of Bettis Academy Road from Sage Creek.

67. The County and SCDOT treated Sage Mill Residential different from similarly situated property owners and applicants along Bettis Academy Road.

68. The unequal application of the County and SCDOT's exactions, permitting review and requirements, and the Aiken County Code of Ordinances on an *ad hoc* basis constituted an intentional and discriminatory exercise of power applied in an irrational and wholly arbitrary manner, without any reasonable or rational basis for disparate treatment.

69. The County and SCDOT, in discriminating against Sage Mill Residential, did so without any conceivable basis to support its actions, or any rational relationship between its denial and any legitimate government interests.

70. The County and SCDOT thus violated Sage Mill Residential's constitutional guarantee of equal protection under law as provided by the Fifth and Fourteenth Amendments to the United States Constitution and Article 1, Section 3 of the South Carolina Constitution.

71. The County and SCDOT's deprivation of Sage Mill Residential's rights and privileges secured by the Fifth and Fourteenth Amendments to the United States Constitution, as stated above, has caused Sage Mill Residential significant general, special, and consequential financial damage as recoverable under 42 U.S.C. § 1983.

72. Sage Mill Residential is therefore entitled to judgment against the County and SCDOT for violation of their constitutional rights to equal protection in an amount of actual damages to be proven at trial.

### FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANTS
(*Promissory Estoppel*)

73. Plaintiff reasserts and realleges each allegation above as if fully repeated herein.

74. Promissory estoppel is a doctrine that holds an estoppel may arise from the making of a promise, even though without consideration, if it was intended that the promise should be relied upon and in fact it was relied upon, and if a refusal to enforce it would be virtually to sanction the perpetration of fraud or would result in other injustice.

75. Where promissory estoppel is available as a remedy, it is a substitute for consideration. A promise binding under principles of promissory estoppel is a contract.

76. The elements of promissory estoppel are: (a) the presence of a promise unambiguous in its terms; (b) reasonable reliance on the promise by the party to whom the promise is made; (c) the reliance is expected and foreseeable by the party who made the promise; and (d) the party to whom the promise is made must sustain injury in reliance on the promise.

77. The Sage Creek PUDs (on the part of Aiken County) and the Encroachment Permit (on the part of SCDOT) constitute unambiguous promises that the site of the Waterfall can be developed into single-family homes as part of a multi-phase development.

78. It was reasonable that Sage Mill Residential would rely on these unambiguous promises as they continued to develop Sage Creek in phases. Furthermore, such reliance by Plaintiff was expected and foreseeable on the part of Defendants.

79. Sage Mill Residential has clearly sustained injury and damages by relying, to its detriment, on the unambiguous promises by Defendants.

80. Sage Mill Residential is entitled to judgment against the County and SCDOT for the significant financial damages that it has suffered due to the detrimental reliance on the unambiguous promises that have not been honored.

**WHEREFORE**, having stated its claims, Plaintiff Sage Mill Residential, Ltd. respectfully requests that this Court enter judgment against Defendants Aiken County, South Carolina and South Carolina Department of Transportation for actual, consequential, and punitive damages, interest, and costs, and for such further relief the Court deems just and proper.

Respectfully submitted,

By: *s/Ellis R. Lesemann*
Ellis R. Lesemann (Fed. ID No. 7168)
erl@lalawsc.com
Benjamin H. Joyce (Fed. ID No. 11769)
bhj@lalawsc.com
LESEMANN & ASSOCIATES LLC
418 King Street, Suite 301
Charleston, SC 29403
(843) 724-5155

*Attorneys for Plaintiff Sage Mill Residential, Ltd.*

May 1, 2024
Charleston, South Carolina